UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL EUGENE GRIMAGE,

      Plaintiff,

v.                             Case No. 3:23-cv-1032-MMH-SJH

SERGEANT A.M. GWARA,

      Defendant.

_____

## **ORDER**

### **I. Status**

Plaintiff Michael Eugene Grimage, an inmate of the Florida penal system, initiated this action on August 25, 2023, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] under 42 U.S.C. § 1983. In the Complaint, he names Sergeant A.M. Gwara as the sole Defendant. See Complaint at 2. Grimage alleges Sergeant Gwara used excessive force when he sprayed Grimage with chemical agents. See id. at 3–5.

This matter is before the Court on Sergeant Gwara's Motion to Dismiss (Motion; Doc. 14). In support of the Motion, Sergeant Gwara has submitted exhibits. See Docs. 14-1 through 14-2. Grimage filed a response in opposition

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

to the Motion. <u>See</u> Plaintiff's Response to Defendant's Motion to Dismiss (Response; Doc. 17). The Motion is ripe for review.

Also before the Court is Grimage's Motion for Default Judgment (Doc. 20), in which Grimage asks the Court to enter default judgment against Sergeant Gwara. The Motion for Default Judgment is due to be denied because Sergeant Gwara timely responded to the Complaint, after waiving service of process, by filing his Motion to Dismiss (Doc. 14) on January 16, 2024.

## II. Grimage's Allegations[2]

Grimage alleges that on May 23, 2023, Sergeant Gwara called him to the cell door and told him to look in another direction. Complaint at 4. "[W]hen [Grimage] return[ed] to face [Sergeant Gwara], [he] had [a] canister aimed directly at [Grimage's] face." <u>Id.</u> According to Grimage, Sergeant Gwara sprayed him with chemical agents, which caused Grimage to gasp for air and "black out." <u>Id.</u> at 4, 5. He asserts that on a prior occasion, Sergeant Gwara contaminated his food tray, and he had requested to speak with Sergeant Gwara's supervisor to provide evidence of the contamination. <u>Id.</u> at 4. Grimage

---

[2] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Grimage, and accept all reasonable inferences that can be drawn from such allegations. <u>Holland v. Carnival Corp.</u>, 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

contends Sergeant Gwara was angry with him because of the food tray incident. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in

order to sustain an action.'" <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Summary of the Arguments

In his Motion, Sergeant Gwara argues that Grimage's claim against him should be dismissed because Grimage failed to properly exhaust his administrative remedies, and Sergeant Gwara is entitled to qualified immunity. <u>See</u> Motion at 6–10. Grimage responds that he exhausted his administrative remedies, and Sergeant Gwara is not entitled to immunity. <u>See</u> Response at 2–4.

## V. Analysis

### A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab.</u>

Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[3] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Grimage, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[4] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Sergeant Gwara bears "the burden of proving that [Grimage] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In

---

[4] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

accordance with  Eleventh Circuit precedent, a court must employ a two-step

process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance
> procedures, he may file suit under § 1983. In response
> to a prisoner suit, defendants may bring a motion to
> dismiss and raise as a defense the prisoner's failure to
> exhaust these administrative remedies. See Turner,
> 541 F.3d at 1081. In Turner v. Burnside we
> established a two-step process for resolving motions to
> dismiss prisoner lawsuits for failure to exhaust. 541
> F.3d at 1082. First, district courts look to the factual
> allegations in the motion to dismiss and those in the
> prisoner's response and accept the prisoner's view of
> the facts as true. The court should dismiss if the facts
> as stated by the prisoner show a failure to exhaust. Id.
> Second, if dismissal is not warranted on the prisoner's
> view of the facts, the court makes specific findings to
> resolve disputes of fact, and should dismiss if, based
> on those findings, defendants have shown a failure to
> exhaust. Id. at 1082–83; see also id. at 1082
> (explaining that defendants bear the burden of
> showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts

outside the pleadings as long as those facts do not decide the case and the

parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d

at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020).

In evaluating whether Grimage has satisfied the exhaustion requirement, the

Court notes that the Eleventh Circuit has determined that a "prisoner need

not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the

institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated

10

list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### 3. The Parties' Positions Regarding Exhaustion

Sergeant Gwara argues that Grimage failed to properly exhaust his administrative remedies. Motion at 8. According to Sergeant Gwara, Grimage submitted no grievance appeals about the May 23, 2023 use of force; therefore, Grimage did not complete the FDOC's three-step grievance process. <u>Id.</u> In support of his argument, Sergeant Gwara attaches a grievance appeal log. <u>See</u> Doc. 14-2.

Sergeant Gwara further contends "[t]he grievance appeal specifically identified by Plaintiff [in the Complaint] as exhausting administrative

11

remedies" fails to satisfy the exhaustion requirement because it only concerns the disciplinary report from the use of force. Motion at 8. Sergeant Gwara attaches the grievance appeal, relevant formal grievance, and responses to those grievances as exhibits to his Motion. See Doc. 14-1. The Court summarizes the grievances and responses below.

On June 7, 2023, Grimage submitted a formal grievance (log #2306-205-053), stating:

> Appellant is appealing [sic] Disciplinary Report Log # 205-231236 due to lack of specifics detailing offense and for lack of probable cause for use of force (dispencing [sic] chemical agent).
>
> Sergeant A.M. Gwara alleged that Appellant was in the "act" of [redacted] and does not detail the type, which does not suffice Rules of Reporting Official's DR Checklist.
>
> Appellant declares that there is [redacted] to support Sgt. Gwara's Statement of Facts [redacted] because Appellant did not have [redacted], external or internal, documented by [redacted] nor does post use of force video footage show [redacted] or complaint, or narration of supervisor, to give validity for dispensing chemical agent in use of force.
>
> Also Warden Davis, see and hear (video/audio) on 5-23-23, between 11:30am-11:59am, which I declare by the penalties of perjury, that you will hear/see Sgt. Gwara send Sgt. Carlson (deliverer of this DR) to specifically call for Cpt. Night and [redacted] of his choice, then maliciously thereafter yell "Inmate

12

> Grimace [redacted] then state did [redacted]." This was his excuse for use of force. [Redacted] discovered and/or documented. Please stand on physical truth evidence.
>
> NOTE: Appellant was not provided DR findings and actions, by [sic] the true facts are documented and on audio/video and cannot be disputed. Therefore, this DR should be overturned due to lack of support for Statement of Facts.

Doc. 14-1 at 4. The Florida State Prison (FSP) Warden returned the grievance without action, noting it did not comply with Rule 33-103.014(1)(a) because it addressed more than one issue or complaint: disciplinary report log #205-231326 and the "circumstances of a use of force." Id. at 3.

Grimage appealed to the FDOC Secretary (log #23-6-19636):

> Appellant is appealing [sic] Grievance Log #2306-205-053 because in Statement of Facts of Disciplinary Report Log# 205-231326 it clearly details that use of force was used because Appellant disobeyed a verbal order.
>
> So to contend against these allegation [sic] (use of force due to disobedience) Appellant "has to" address both issue [sic] because different appeals for same named infraction is improper according to Chapter 33-601.
>
> Clearly on Request for Administrative Appeal, I stated: No [redacted] revealed and/or noted any [redacted] to support reporting officer's use of force (dispense chemical agent) and Appellant declared specifically to Warden Davis he would see and hear prior to this alleged infraction's initiation, that

13

> Reporter had [redacted].
>
> Therefore, returning Appellant's appeal without action is premature because D.R.#205-231326 thoroughly cannot be contended without disputing both issues in said D.R. (cause and action taken).

Id. at 2. The FDOC Secretary approved Grimage's appeal:

> Your request for administrative appeal has been received and evaluated. The disciplinary report you received on 05/23/2023 for violation (6-1): Disobeying an order, has been overturned. Our decision to overturn the disciplinary report was based on technical errors made in the processing of same. The institution has been advised of this decision and any necessary adjustments will be made to your inmate file.
>
> Based on the above information, your appeal to this office is approved.

Id. at 1.

In response to Sergeant Gwara's Motion, Grimage contends that he properly exhausted his administrative remedies. See Response at 3. He refers to the approved grievance appeal that overturned his disciplinary report to support his argument. Id. at 2–3. He also asserts that he filed grievance log #23-6-20109, in which he alleged Sergeant Gwara made "sexually degrading threats" and "explained the use of force in this case." Id. According to Grimage, the FDOC Secretary approved the grievance. Id.

14

#### 4. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion and Response and accept as true Grimage's allegations. <u>See</u> <u>Whatley</u>, 802 F.3d at 1209. If Grimage's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. <u>See</u> <u>id.</u>

Accepting Grimage's view of the facts as true, the Court finds dismissal of the claim against Sergeant Gwara for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process and considers Sergeant Gwara's arguments about exhaustion and makes findings of fact.

#### 5. <u>Turner</u> Step Two

At the second prong of the <u>Turner</u> analysis, the Court finds that Sergeant Gwara has failed to meet his burden of establishing that Grimage did not properly exhaust his administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1082 ("The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."). Although Sergeant Gwara argues that Grimage failed to exhaust his administrative remedies because he did not file any pertinent grievance appeals, this argument, by itself, is not

persuasive. The FDOC has a three-step grievance process that concludes with the inmate's submission of a grievance appeal. However, an inmate need not proceed to the appeal step if he or she received an approved informal or formal grievance. See, e.g., Dombrowski v. Wilson, No. 3:21-cv-1199-BJD-PDB, 2023 WL 2403857, at *3 (M.D. Fla. Mar. 8, 2023)[5] (finding that the plaintiff exhausted his administrative remedies because his informal grievances were approved); see also Tierney v. Hattaway, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance.").

Based on the record before the Court, it is unclear if Grimage needed to submit a grievance appeal in order to properly exhaust his administrative remedies. Sergeant Gwara submits neither declarations nor grievance logs demonstrating Grimage failed to receive an approved informal or formal grievance regarding the incident. Accordingly, the Court does not conclude that

---

[5] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Grimage failed to exhaust his administrative remedies merely because he did not submit a relevant grievance appeal.

Insofar as Sergeant Gwara argues the grievances that Grimage listed in his Complaint also do not demonstrate proper exhaustion, the Court is uncertain whether those grievances represent the entirety of Grimage's relevant exhaustion efforts. Grimage only identified the formal grievance and grievance appeal in response to the complaint form's prompt to set forth which claims the grievance procedure at his correctional facility covers. Complaint at 6. Grimage responded, "Claim that Defendant wrongfully submitted falsifying Report #205-231326 alleging self-injurious behavior, where medical does not report any signs of injury (externally/internally), therefore disqualifying Defendant's reason for unnecessary and excessively malicious use of force. See Grievance #2306-205-053 and Responses to it by Secretary #23-6-19636." Id. Neither the Complaint, nor even Grimage's Response, suggest that these grievances represent the totality of his efforts to exhaust his administrative remedies as to the use of force. See Complaint at 6–8; Response at 2–3. And Sergeant Gwara fails to offer evidence or assert that Grimage has filed no other informal or formal grievances regarding the use of force.

17

Moreover, in his Complaint and Response, Grimage states he filed a grievance appeal (log #23-6-20109) that the FDOC Secretary approved. See Complaint at 8; Response at 3. According to Grimage, the grievance appeal concerned "sexually degrading threats upon Plaintiff" from Sergeant Gwara, and it "explained the use of force in this case." Response at 3. Sergeant Gwara has not attached this grievance and response to his Motion.[6] While the grievance may not have alerted officials to the issues in contention in Grimage's Complaint, the Court does not have sufficient evidence to reach this conclusion without evaluating the relevant grievance and response. Based on the above, the Court denies the Motion as to the exhaustion issue without prejudice to Sergeant Gwara reasserting it in a properly supported motion for summary judgment.

## B. Qualified Immunity

Sergeant Gwara alternatively asserts that he is entitled to qualified immunity. Motion at 8–10. The Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v.

---

[6] The grievance appeal log reflects that the FDOC Secretary approved grievance log #23-6-20109. See Doc. 14-2 at 4. The subject of the grievance is redacted. See id.

Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337). The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the

19

scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. <u>See id.</u> To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), <u>overruled in part on other grounds by</u> <u>Pearson</u>, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. <u>Maddox</u>, 727 F.3d at 1120–21 (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850–51 (11th Cir. 2017); <u>see</u> <u>King v. Pridmore</u>, 961 F.3d 1135, 1142 (11th Cir. 2020). The Court notes that where the alleged conditions are particularly egregious, a general constitutional principle

already identified in decisional law may be applicable such that a reasonable officer would know that the egregious conditions violate the Constitution. Taylor v. Riojas, 592 U.S. 7, 8–9 (2020).

Sergeant Gwara argues that he is entitled to qualified immunity because Grimage's allegations are conclusory, and as such, his claim must fail. Motion at 9. According to Sergeant Gwara, Grimage "has not provided any background to justify his claim[] that the use of force was excessive, rose to the level of a constitutional violation, or that Defendant acted in a manner outside the course and scope of his position." Id. at 10. Grimage responds that Sergeant Gwara is not entitled to immunity because he "clearly detailed in the statement of claim how his 8th Amendment constitutional right was violated by the declaration made in this case." Response at 4.

Accepting Grimage's allegations with respect to Sergeant Gwara as true, the Court finds that Grimage has alleged facts sufficient to state a plausible excessive force claim against Sergeant Gwara. Grimage alleges that Sergeant Gwara called him to the cell door and told him to look in another direction to distract him. Complaint at 4. "[W]hen [Grimage] return[ed] to face [Sergeant Gwara], [he] had [a] canister aimed directly at [Grimage's] face," and Sergeant Gwara sprayed him with chemical agents. Id. Grimage also alleges he has

21

breathing problems as a result of the use of force. Because Grimage has stated a plausible Eighth Amendment claim against Sergeant Gwara, he is not entitled to qualified immunity at this stage of the litigation. See Sconiers v. Lockhart, 946 F.3d 1256, 1265 (11th Cir. 2020) (noting the excessive force standard "requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)); see also Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010) (recognizing "prior decisions of this court and other circuit courts of appeals . . . have concluded that where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement."). Accordingly, his Motion is due to be denied.

Therefore, it is now

**ORDERED:**

1.  Plaintiff's Motion for Default Judgment (Doc. 20) is **DENIED**.

2.      Defendant's Motion to Dismiss (Doc. 14) is **DENIED without prejudice** to reasserting his arguments in a properly supported motion for summary judgment.

3.      Defendant shall respond to the Complaint (Doc. 1) **no later than August 26, 2024**. Upon the filing of his answer, the Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of July, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 7/23
c:      Michael Eugene Grimage, #415545
        Counsel of record